UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

WILLIE JAMES STEPHENSON,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:13-cv-397
Dlott, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final

decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications

for disability insurance benefits (DIB) and supplemental security income (SSI). This matter is

before the Court on plaintiff's Statement of Errors (Doc. 26) and the Commissioner's response in

opposition (Doc. 31).

**I. Procedural Background**

Plaintiff filed applications for DIB and SSI in August of 2008, alleging disability since

November 15, 2007 due to back problems. Plaintiff's applications were denied initially and

upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing

before administrative law judge (ALJ) Joseph L. Brinkley. Plaintiff and a vocational expert (VE)

appeared and testified at the ALJ hearing, which was held via video. On August 26, 2010, the

ALJ issued a decision denying plaintiff's DIB and SSI applications. Plaintiff's request for

review by the Appeals Council was denied, making the decision of the ALJ the final

administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment - *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities - the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant

can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

## B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2012.
>
> 2. The [plaintiff] has not engaged in substantial gainful activity since November 15, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The [plaintiff] has the following severe impairments: Multi-Level Cervical Spondylosis; and Lumbar Degenerative Disc Disease (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, [the ALJ] find[s] that the [plaintiff] has the residual functional capacity to perform a reduced range of light work. Light work is defined in 20 CFR 404.1567(b) and 416.967(b). The [plaintiff] can lift, carry, push, or pull 20 pounds occasionally and 10 pounds frequently; stand or walk 6 hours in an 8-hour workday; and sit 6 hours in an 8-hour workday; occasionally climb ladders, ropes and scaffolds; occasionally stoop and crouch; frequently engage in bilateral overhead reaching; and must avoid concentrated exposure to extreme cold, wetness, vibration and hazards.
>
> 6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).[1]
>
> 7. The [plaintiff] was born [in] 1962 and was 45 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

---

[1] Plaintiff's past relevant work was as a machine operator II, which is medium, semi-skilled work, and a warehouse worker, which is medium, unskilled work. (Tr. 17).

8. The [plaintiff] has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).[2]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from November 15, 2007, through the date of [the ALJ's] decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 13-18).

## C.  Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. §

405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by

substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v.*

*Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.,*

478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*,

402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229

(1938)).  Substantial evidence consists of "more than a scintilla of evidence but less than a

preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  In

---

[2] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative light, unskilled occupations such as office helper (3,000 jobs in the state and 100,000 jobs nationally), ticket taker (1,500 jobs in the state and 80,000 jobs nationally), and gate attendant (900 jobs in the state and 90,000 jobs nationally). (Tr. 18).

deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Specific Errors

On appeal, plaintiff presents four assignments of error: (1) the ALJ erred at step two of the sequential evaluation process by finding plaintiff's depression and anxiety to be non-severe impairments; (2) the ALJ did not apply the correct legal standards in fashioning the residual functional capacity (RFC) and the RFC finding is not supported by substantial evidence; (3) the ALJ erred in assessing plaintiff's credibility; and (4) the ALJ erred in finding there is other work that plaintiff could perform by relying on vocational testimony which was based on a hypothetical question that failed to include all of plaintiff's impairments. (Doc. 26).

### 1. The ALJ's step two finding.

Plaintiff alleges as his first assignment of error that the ALJ erred at step two of the sequential evaluation process by finding his depression and anxiety to be non-severe impairments. (Doc. 11 at 6-10). Plaintiff alleges that Raymond Stegall, LCSW, who completed two mental health assessments of plaintiff, is trained in the field of psychopathology and his

observations and diagnostic test findings support a diagnosis of depression and anxiety. (*Id.* at 8). Specifically, plaintiff indicates that Mr. Stegall relied on "signs [which] included experiencing sadness and depression with hopelessness, anhedonia, vague auditory and visual phenomena, problems with memory and concentration, and some history of mood instability [Tr.] 387." (*Id.*). Plaintiff alleges that at the very least, Mr. Stegall's notes "raise a colorable claim of a mental impairment," and plaintiff suggests the ALJ was obligated to obtain a medical assessment of the limitations caused by plaintiff's depression and anxiety. (*Id.*).

In response, the Commissioner contends that the ALJ did not err by finding plaintiff's depression and anxiety were not severe impairments. (Doc. 31). The Commissioner alleges that substantial evidence supports the ALJ's finding that plaintiff's depression and anxiety were not "medically determinable impairments"; therefore, plaintiff's mental health symptoms could not be considered in assessing his functional limitations and his ability to perform basic work activities. (*Id.* at 5). The Commissioner alleges that evidence provided by Mr. Stegall cannot establish the existence of a "medically determinable impairment" because Mr. Stegall is not an "acceptable medical source" under the regulations. (*Id.*).

At step two of the sequential evaluation process, the claimant must show that he suffers from a "severe medically determinable physical or mental impairment." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004) (citing 20 C.F.R. § 404.1520(a)(4)(ii)). Symptoms alone cannot constitute a "medically determinable impairment"; there must be "medical signs or laboratory findings to substantiate the existence of a medically determinable physical or mental impairment[.]" SSR 96-4p, 1996 WL 374187, at *2. Absent such signs or findings, the individual must be found not disabled at step two of the sequential evaluation process. *Id.* A diagnosis of a "medically determinable impairment" must be made by an "acceptable medical

sources." 20 C.F.R. §§ 404.1513, 416.913 ("We need evidence from acceptable medical sources to establish whether you have a medically determinable impairment(s)."); SSR 06-03, 2006 WL 2329939, at *2 (evidence from an acceptable medical source is necessary to establish the existence of a "medically determinable impairment"). A licensed clinical social worker is not an "acceptable medical source" under the regulations but is an "other source." *See* 20 C.F.R. §§ 404.1513(d), 416.913(d). Evidence from "other sources" as defined in the regulations cannot establish the existence of a "medically determinable impairment" but may provide insight into the severity of the individual's impairment and how it affects the individual's ability to function. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007); SSR 06-03p, 2006 WL 2329939, at *2.

A severe impairment or combination of impairments is one that significantly limits the physical or mental ability to perform basic work activities. See 20 C.F.R. §§ 404.1521, 416.921. Basic work activities relate to the abilities necessary to perform most jobs. 20 C.F.R. §§ 404.1521(b), 416.921(b). An individual's symptoms "will not be found to affect [his] ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present." 20 C.F.R. §§ 404.1529(b), 416.929(b). Sections 404.1528, 416.928 define these terms as follows:

> (a) Symptoms are your own description of your physical or mental impairment. . .
> .
> (b) Signs are . . . psychological abnormalities which can be observed, apart from your statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception. They must also be shown by observable facts that can be medically described and evaluated.
> (c) Laboratory findings are . . . psychological phenomena which can be shown by the use of medically acceptable laboratory diagnostic techniques. Some of these diagnostic techniques include . . . psychological tests.

20 C.F.R. §§ 404.1528, 416.928. "[W]hen mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology." *Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989) (quoting *Poulin v. Bowen*, 817 F.2d 865, 873-74 (D.C. Cir. 1987) (quoting *Lebus v. Harris*, 526 F.Supp. 56, 60 (N.D. Cal. 1981)).

Plaintiff is not required to establish total disability at step two of the sequential evaluation process. Rather, the severe impairment requirement is a threshold element that plaintiff must prove in order to establish disability within the meaning of the Act. *Gist v. Secretary of H.H.S.*, 736 F.2d 352, 357-58 (6th Cir. 1984). An impairment will be considered non-severe only if it is a "slight abnormality which has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience." *Farris v. Secretary of H.H.S.*, 773 F.2d 85, 90 (6th Cir. 1985) (citing *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)). The severity requirement is a "*de minimis* hurdle" in the sequential evaluation process. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). *See also Rogers*, 486 F.3d at 243 n.2.

Here, the ALJ found that plaintiff has two severe impairments: multi-level cervical spondylosis and lumbar degenerative disc disease. (Tr. 13). The ALJ noted that plaintiff also alleged symptoms of depression and anxiety. (Tr. 14). However, the ALJ determined that plaintiff's alleged mental conditions did not constitute "medically determinable impairments" because the record did not include a diagnosis or other evidence of a psychological disorder from a "medically acceptable source." (*Id.*). Substantial evidence supports the ALJ's finding that plaintiff's depression and anxiety do not constitute "medically determinable impairments" within the meaning of the Social Security rules and regulations. The only evidence of record related to

a mental impairment was generated by a licensed clinical social worker, Mr. Stegall, who

performed two mental health assessments in April 2009 and May 2010. (Tr. 382, 383-88).

Following his initial assessment on April 8, 2009, Mr. Stegall diagnosed Depressive Disorder

NOS and [Rule-Out] Bipolar Disorder NOS.[3] (Tr. 382). Because Mr. Stegall is not an

"acceptable medical source," the diagnosis he made does not constitute evidence of a "medically

determinable impairment." *See* 20 C.F.R. §§ 404.1513, 416.913. Plaintiff has not pointed to any

other evidence in the record that shows he suffers from a medically determinable mental

impairment.

In addition to the lack of a diagnosis by an "acceptable medical source," the ALJ also

reasonably relied on Mr. Stegall's notes to find that plaintiff does not suffer from a medically

determinable mental impairment. (Tr. 14). The ALJ found that according to Mr. Stegall's notes,

plaintiff did "not endorse disabling signs and symptoms." (*Id*.). The notes reflect that plaintiff

reported some subjective psychological symptoms in April 2009, including "social withdrawal,"

"some irritability," being "tearful twice a week," and "problems with memory and

concentration." (Tr. 382). Mr. Stegall also reported that plaintiff endorsed 8 of 13 symptoms of

Bipolar Spectrum Disorder in a Mood Disorder Questionnaire (MDQ) plaintiff answered in

connection with the assessment. (Tr. 382). However, the notes also document that plaintiff

attended to his activities of daily living, he performed some household chores, he attended

church, he had adequate social skills, he had regular contact with his mother and brother, he had

occasional contact with approximately five friends, and he continued to pursue a hobby. (*Id*.).

Further, although plaintiff was referred for an evaluation for ongoing medication management

and for individual psychotherapy (*Id*.), he did not participate in counseling and did not see Mr.

Stegall until over one year later in May 2010, at which time Mr. Stegall performed a second

---

[3] Mr. Stegall did not make a diagnosis as part of the second assessment one year later. (Tr. 383-88).

9

assessment. (Tr. 383-88). In May 2010, plaintiff reported worsening symptoms of depression and anxiety, increasing social withdrawal, and memory and concentration problems. (Tr. 384). According to Mr. Stegall, plaintiff endorsed fewer behaviors (5 of 13) consistent with Bipolar Spectrum Disorder than he had one year earlier. (Tr. 385). Mr. Stegall reported that plaintiff had "limited insight, judgment, impulse control and limited to fair motivation for treatment" and he "appear[ed] significantly depressed with passive thoughts of non existance [sic] but denied current suicidal plan or intent." (Tr. 385). However, there is no indication as to how Mr. Stegall reached these conclusions, and the assessment does not show that Mr. Stegall relied on anything other than plaintiff's subjective complaints and self-reported symptoms. Such subjective complaints are insufficient to establish that plaintiff suffers from a severe mental impairment that impacts his ability to perform basic work activities. *See* SSR 96-3p, 1996 WL 374181, at *2; 96-4p, 1996 WL 374187, at *2 (a severe impairment that affects the individual's ability to do basic work activities cannot be established based on symptoms alone; instead the individual must first establish by objective medical evidence that he has a medically determinable mental impairment).

Plaintiff appears to make the additional argument that the ALJ's decision is not substantially supported because the ALJ failed to obtain a medical opinion on the functional limitations caused by his mental impairments. (Doc. 26 at 8-9, citing *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp.2d 908, 913 (N.D. Ohio 2008) (court held under circumstances of the case before it that objective medical evidence of extensive degenerative disc disease necessitated medical source opinion to assist in translating raw medical data into functional limitations)). Plaintiff's position is not supported by the governing regulations or by the record. The regulations provide that the agency may recontact a psychologist or other medical source "[i]f

the evidence is consistent but we have insufficient evidence to determine whether you are

disabled, or if after weighing the evidence we determine we cannot reach a conclusion about

whether you are disabled. . . ." 20 C.F.R. §§ 404.1520b(c), 416.920b(c). Here, the ALJ

reasonably concluded based on the evidence of record that plaintiff does not suffer from a severe

medically determinable mental impairment that impacts his ability to perform basic work

functions. (Tr. 14). Plaintiff has not pointed to inconsistent evidence or other evidence that

suggests the evidence before the ALJ was insufficient to make this determination. The ALJ did

not err by failing to obtain an opinion on the functional limitations caused by plaintiff's alleged

depression and anxiety.

For these reasons, plaintiff's first assignment of error should be overruled.

**2. The RFC finding**

Plaintiff alleges as his second assignment of error that the ALJ's RFC finding is not

supported by substantial evidence because the ALJ (1) failed to address plaintiff's mental

limitations, (2) made misstatements of fact related to his medical treatment history, and (3) failed

to indicate the weight afforded the opinion of consultative examining physician Dr. James

Harvey, M.D. (Doc. 26 at 10-12). In response, the Commissioner denies that the ALJ made any

factual errors and contends that any error the ALJ committed by failing to specify the weight

given Dr. Harvey's opinion was harmless. (Doc. 31 at 6-9).

For the reasons discussed above, the ALJ did not err by failing to address plaintiff's

mental limitations when formulating the RFC finding. The ALJ considered the evidence related

to plaintiff's mental impairments and found that plaintiff's alleged depression and anxiety did

not constitute severe medically determinable impairments. Plaintiff did not carry his burden at

step two of the sequential evaluation process to produce evidence that shows he suffers from a

severe medically determinable mental impairment that impacts his ability to perform basic work activities.

Further, the record does not support plaintiff's allegation that the ALJ misstated the facts related to his medical treatment history. Plaintiff alleges that the ALJ misrepresented his treatment history by stating the "record is devoid of medical treatment until the claimant saw consultative examiner James Harvey, M.D. on October 18, 2008." (Doc. 26 at 10, citing Tr. 15). Plaintiff notes that he received treatment for his back impairment and pain between December 2006 and November 2007. (*Id.*). However, in alleging the ALJ misrepresented the record in this respect, plaintiff has taken the ALJ's statement out of context. The ALJ noted that plaintiff had undergone medical treatment prior to the onset date and discussed plaintiff's treatment history for the period August 2007 to November 2007 before acknowledging there was no additional treatment until October 2008. (Tr. 15, citing Tr. 276-86). There is no indication in the record that the ALJ misstated these facts.

Finally, plaintiff has not shown that the ALJ erred by failing to assign weight to the opinion of consultative examining physician Dr. Harvey. (Doc. 26 at 11-12). Dr. Harvey examined plaintiff on October 18, 2008, and reviewed the results of an MRI and lumbar spine CT with contrast from the prior month. (Tr. 279-85). Dr. Harvey noted that plaintiff had been treated with three epidural injections and with medications. (Tr. 280). He reported that plaintiff's gait was antalgic, he walked "with the right pelvic brim held lower than the left and limp[ed] on the left leg," and range of motion of the dorsolumbar spine was limited. (Tr. 281). Dr. Harvey concluded that plaintiff has "apparent[] multilevel central and neuroforaminal disease of the lumbar spine with chronic pain and radicular radiation towards the left leg. This limits his ability to sit, stand, lift, bend, stoop, climb or carry." (*Id.*). The ALJ acknowledged Dr.

12

Harvey's report, noting that the physical examination findings were normal except for antalgic gait and limited range of motion of the dorsolumbar spine. (Tr. 15-16). However, the ALJ did not assign weight to Dr. Harvey's opinion.

Plaintiff argues that the ALJ erred by failing to credit Dr. Harvey's opinion because he was the only examining physician to render an opinion on plaintiff's functional capacity. (Doc. 26 at 11). This is not accurate. Plaintiff's treating orthopedist, Dr. Lee Kelley, M.D., assessed plaintiff's functional limitations. (Tr. 271). The ALJ afforded the "greatest weight" to Dr. Kelley's opinion that plaintiff could perform "light duty work" with no repetitive lifting over 20 pounds and no pushing/pulling over 30 pounds (Tr. 254, 271).[4] (Tr. 16).

Further, the ALJ did not err by omitting to assign weight to Dr. Harvey's opinion because Dr. Harvey only generally opined that plaintiff was limited in "his ability to sit, stand, lift, bend, stoop, climb or carry." (Tr. 281). Dr. Harvey did not give any indication as to the type or degree of limitations in these areas of functioning. Thus, Dr. Harvey provided no "medical opinion" for the ALJ to evaluate pursuant to 20 C.F.R. §§ 404.1527, 416.927. *See Rivera ex rel. H.R. v. Commissioner of Social Sec.*, No. 3:11-cv-163, 2012 WL 3562023, at *4 (S.D. Ohio Aug. 17, 2012) (where treating physician's notes did not contain any opinion as to the severity of the plaintiff's impairments or an assessment of the functional limitations imposed by the impairments, there was no "medical opinion" that the ALJ was required to evaluate pursuant to 20 C.F.R. § 404.1527) (citing *Young v. Sec'y of H.H.S.*, 925 F.2d 146, 151 (6th Cir. 1990); *Varley v. Sec'y of H.H.S.*, 820 F.2d 777, 780 (6th Cir. 1987)). *See also Bowen*, 478 F.3d at 749 (finding that the treating psychiatrist's general findings were relevant but without an RFC

---

[4] Plaintiff incorrectly states that the ALJ afforded the non-examining state agency physicians' opinions the "greatest weight" and "good weight." (Doc. 26 at 12). In fact, the ALJ gave "good weight" to the opinion of state agency reviewing physician Dr. Arthur Lesesne, M.D., with regard to the non-exertional limitations he imposed (Tr. 356-63) and "some weight" to the opinion of state agency reviewing physician Dr. Arthur Schiff, M.D., who opined that plaintiff was limited to less than medium exertional work (Tr. 287-94). (Tr. 16).

assessment did not speak directly to the issue of whether the plaintiff's RFC permitted him to work despite his psychological impairment).

Assuming the ALJ erred by failing to assign weight to Dr. Harvey's opinion, the error was harmless. Both Dr. Harvey in his opinion and the ALJ in his RFC finding assessed plaintiff as limited in his ability to sit, stand, lift, bend, stoop, climb and carry. (Tr. 281, 14). However, the ALJ imposed far more specific limitations than Dr. Harvey by finding plaintiff was able to perform light work with the following restrictions: he "can lift, carry, push, or pull 20 pounds occasionally and 10 pounds frequently; stand or walk 6 hours in an 8-hour workday; and sit 6 hours in an 8-hour workday; occasionally climb ladders, ropes and scaffolds; occasionally stoop and crouch; frequently engage in bilateral overhead reaching; and must avoid concentrated exposure to extreme cold, wetness, vibration and hazards." (Tr. 14). These specific restrictions are not inconsistent with the general limitations imposed by Dr. Harvey. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 532 (6th Cir. 1997) (treating chiropractor's advice to refrain from "extensive lifting" was not objective evidence that plaintiff was incapable of lifting 25 to 30 pounds where there was no indication as to what that term entailed) (citing *Villarreal v. Secretary of Health and Human Servs.*, 818 F.2d 461, 462-63 (6th Cir. 1987) ("noting that the treating physician's use of the phrases 'heavy labor' or 'a lot of stress' provided 'qualified opinions, at best, as to the degree of disability'"). Because the limitations assessed by the ALJ were more restrictive than those included in Dr. Harvey's report, any error the ALJ committed by failing to specify the weight accorded Dr. Harvey's opinion was harmless. *See Engebrecht v. Comm'r of Soc. Sec.*, 572 F. App'x 392, 401-02 (6th Cir. 2014) (assuming ALJ failed to consider consultative examining psychologist's opinion, the error was harmless where ALJ's RFC

14

assessment was consistent with the psychologist's opinion). *See Engebrecht*, 572 F. App'x at 401-02.

For these reasons, plaintiff's second assignment of error should be overruled.

### 3. The ALJ's credibility finding

Plaintiff alleges that the ALJ erred in assessing his credibility. (Doc. 26 at 12-14). Relying on case law from district courts in New York, plaintiff alleges that the ALJ erred by using boilerplate language that indicates the ALJ assessed his RFC prior to issuing the credibility finding. (*Id*. at 12-13, citing Tr. 15). Plaintiff further alleges that the ALJ erred by failing to acknowledge his complaints of numbness in his arms and legs, which are documented by objective testing (*Id*. at 14, citing Tr. 347, 371); by failing to find the evidence supports his symptoms and alleged limitations (*Id*.); and by failing to consider the side effects of his medications, including disorientation caused by Ultram and sleepiness caused by Flexeril (*Id*., citing Tr. 271).

In light of the ALJ's opportunity to observe the individual's demeanor at the hearing, the ALJ's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir. 2001); *Kirk v. Sec. of H.H.S.*, 667 F.2d 524, 538 (6th Cir. 1981). "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994). The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst v. Sec. of H.H.S.*, 753 F.2d 517, 519 (6th Cir. 1985) (citing *Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir. 1984)).

Subjective complaints of pain and other symptoms are evaluated under the standard set forth in *Duncan v. Secretary of H.H.S.*, 801 F.2d 847, 852-53 (6th Cir. 1986). In order to find

plaintiff disabled on the basis of pain alone, the Commissioner must first determine whether there is objective medical evidence of an underlying medical condition. *Id*. at 853. If there is, the Commissioner must then determine: (1) whether the objective medical evidence confirms the severity of the pain alleged by plaintiff; or (2) whether the underlying medical impairment is severe enough that it can reasonably be expected to produce the allegedly disabling pain. *Id*.

In addition to the objective medical evidence, the Commissioner must consider the opinions and statements of the plaintiff's doctors. *Felisky*, 35 F.3d at 1040. Additional specific factors relevant to the plaintiff's allegations of pain include his daily activities; the location, duration, frequency and intensity of his pain; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any medication plaintiff takes to alleviate his pain or other symptoms; treatment other than medication plaintiff has received for relief of his pain; and any measures the plaintiff uses to relieve his pain. *Id*. at 1039-40; 20 C.F.R. §§ 404.1529(c), 416.929(c). Although plaintiff is not required to provide "objective evidence of the pain itself" in order to establish he is disabled, *Duncan,* 801 F.2d at 853, statements about his pain or other symptoms are not sufficient to prove his disability. 20 C.F.R. §§ 404.1529(a), 416.929(a). The record must include "medical signs and laboratory findings which show that [plaintiff has] a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence . . . would lead to a conclusion that [plaintiff is] disabled." *Id*.

Initially, the ALJ did not err by relying on boilerplate language that some circuits have criticized as suggesting a "backwards approach to assessing" plaintiff's credibility and RFC. *See Cox v. Comm'r of Soc. Sec*., 615 F. App'x 254, 260 (6th Cir. 2015) (citing cases). The specific boilerplate to which plaintiff objects reads: "After careful consideration of the evidence, I find

that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 15).  Although the Sixth Circuit has found this boilerplate "unhelpful and poorly worded," use of the boilerplate as an introduction to or summation of a credibility finding does not constitute error.  *Cox*, 615 F. App'x at 260.  Rather, it is only when the ALJ substitutes the boilerplate for an explanation of the credibility finding and fails to explain his reasons for his credibility determination will use of the boilerplate constitute error.  (*Id*.).  The ALJ did not commit that error here.

The ALJ's credibility determination in this case is substantially supported by the record and is entitled to deference.  The ALJ thoroughly reviewed the medical evidence of record in connection with his determination that plaintiff retained the RFC to perform a reduced range of light work.  (Tr. 15-16, citing Tr. 271- on examination by Dr. Kelley, plaintiff demonstrated pain and limitation with bending, but lower extremity motor and sensory functions were intact and bilateral straight leg test results were negative; Dr. Kelley recommended surgery and maintained plaintiff on light duty restrictions, but plaintiff declined to have surgery and was treated with pain medication and epidural steroid injections (Tr. 348); Tr. 276-85- Dr. Harvey's physical examination findings, including muscle, grip and pinch strength, were normal except for antalgic gait and limited range of motion of dorsolumbar spine; Tr. 323-24- physical examination findings during 11/9/08 emergency room visit were normal except for lower back pain, and attending physician declined to refill narcotics prescription for chronic pain; Tr. 306-07- 2/27/09 emergency room visit following motor vehicle accident yielded findings of tenderness and decreased flexion and extension of lumbar spine but otherwise normal examination findings; Tr.

17

300-01- 4/17/09 emergency room visit for exacerbation of back pain yielded findings of tenderness and decreased range of motion of lumbar spine but otherwise normal examination findings with normal muscle strength; Tr. 327-44- physical examination findings were normal after plaintiff presented to emergency room complaining of pain at 10/10 level; Tr. 347-49- plaintiff displayed normal gait and strength at 7/10/09 office visit and physical examination was normal except for mildly positive Hoffman sign bilaterally; Tr. 376-77, 4/27/10- physical examination during emergency room visit for complaints of neck and back pain yielded no positive objective findings).  The ALJ reasonably relied on a lack of abnormal objective findings on physical examination and an absence of neurological deficits to find that plaintiff's complaints of severe chronic back pain were not fully credible. *See Jones v. Secretary, Health and Human Services*, 945 F.2d 1365, 1369-1370 (6th Cir. 1991) (reliable objective evidence of pain includes medical evidence of muscle atrophy, reduced joint motion, muscle spasm and sensory and motor disruption).

In addition, the ALJ acknowledged plaintiff's complaints of numbness and tingling in his arms and hands but reasonably discounted the credibility of those complaints based on plaintiff's representation at a July 2009 doctor's visit that he did not have difficulties with the use of his hands. (Tr. 16, citing Tr. 347). Moreover, although plaintiff complained to Dr. Kelley in November 2007 that Ultram caused him to feel disoriented and Flexeril made him feel sleepy (Tr. 271), the ALJ did not err by failing to consider these alleged side effects from plaintiff's medications when assessing his credibility. Despite plaintiff's complaints, Dr. Kelley found plaintiff capable of performing light duty work with restrictions. (*Id.*). Plaintiff has not pointed to any other evidence in the record that indicates his medication causes debilitating side

effects.[5]

For these reasons, the ALJ properly applied the two-part *Duncan* standard in evaluating plaintiff's subjective complaints of pain. The ALJ conducted a thorough evaluation of plaintiff's complaints in light of the objective medical evidence of record and other pertinent evidence. Substantial evidence supports the ALJ's determination based on the medical and other evidence of record that plaintiff does not suffer from debilitating pain. The ALJ's credibility finding is entitled to deference. Plaintiff's third assignment of error should be overruled.

### 4. The ALJ's step five finding

Plaintiff alleges as his fourth assignment of error that the ALJ's finding at step five of the sequential evaluation process is not supported by substantial evidence because the hypothetical question posed to the VE does not accurately portray plaintiff's physical and mental impairments. (Doc. 26 at 15-16). Plaintiff alleges that the limitations incorporated into the RFC finding and included in the hypothetical are not supported by substantial evidence and "were the product of errors" for the reasons stated in support of his previous assignments of error. (*Id.* at 15).

Plaintiff has not developed any new legal or factual arguments in support of his fourth assignment of error. Plaintiff simply sets forth the legal proposition that in order for a VE's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a

---

[5] Plaintiff also suggests that the ALJ erred by failing to take into account plaintiff's inability to afford treatment. (Doc. 26 at 14, citing SSR 82-59, 1982 WL 31384). SSR 82-59 concerns the policy and criteria needed "for a finding of failure to follow prescribed treatment when evaluating disability. . . ." *Id.* Plaintiff has not developed facts or law in support of an argument that the ALJ erroneously discounted his credibility based on his failure to follow prescribed treatment and has therefore waived any such argument. *See Rice v. Comm'r of Soc. Sec.*, 169 F. App'x 452, 454 (6th Cir. 2006). *See also McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.").

claimant's physical and mental limitations. (*Id.*; s*ee Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004). Plaintiff alleges that for the reasons presented in connection with his first three assignments of error, the functional limitations found by the ALJ and incorporated into the hypothetical posed to the VE do not accurately reflect his impairments. (Doc. 26 at 15). The Court has rejected plaintiff's arguments and determined that the ALJ's RFC finding is supported by substantial evidence. It follows that the ALJ did not err at step five of the sequential evaluation process by relying on VE testimony in response to a hypothetical question incorporating the limitations assessed by the ALJ in the RFC finding. Plaintiff's fourth assignment of error should be overruled.

## IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **AFFIRMED** and this matter be **CLOSED** on the docket of the Court.

Date: 12/4/15

Karen L. Litkovitz
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

WILLIE JAMES STEPHENSON,                    Case No. 1:13-cv-397
    Plaintiff,                                          Dlott, J.
                                   Litkovitz, M.J.

    vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations. This period may be extended further by the Court on

timely motion for an extension. Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections. If the Report

and Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs. A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in

accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140

(1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).